**STONEHENGE, LTD. Plaintiff,**

v.

**Deborah Koons GARCIA and David Hellman, Co–Executors of The Estate of Jerome J. Garcia, Grateful Dead Merchandising, Inc., and Peter McQuaid, Defendants.**

No. 97 Civ. 6606(SAS).

United States District Court,
S.D. New York.

Jan. 13, 1998.

Barry A. Cooper, Amy B. Goldsmith, Gottlieb, Rackman & Reisman, P .C., New York, NY, for Stonehenge, Ltd.

Gregory A. Markel, Nancy I. Ruskin, Brobeck, Phleger & Harrison, LLP, New York NY, for Defendant Estate.

Lawrence K. Rockwell, Eric W. Doney, David B. Sullivan, Donahue, Gallagher, Woods & Woods, LLP, Oakland, CA, for Defendants Grateful Dead Merchandising and Peter McQuaid.

## OPINION AND ORDER

SCHEINDLIN, District Judge.

Plaintiff Stonehenge Ltd. filed a Complaint on September 5, 1997, seeking a declaratory judgment that it is not in breach of its Licensing Agreement with Nora Sage, allegedly the agent of the defendant Estate of Jerome J. Garcia ("the Estate"). The Complaint also seeks damages for tortious interference with contractual relations, intentional tortious interference with prospective economic advantage, breach of implied covenant of good faith, and injury to business reputation. The Estate, now joined by the other defendants, moved to transfer the action pursuant to 28 U.S.C. § 1404, or, in the alternative, to dismiss the Complaint or stay the action pending a petition to compel arbitration. For the reasons stated below, the defendants' motion to transfer is granted. Because the action will be transferred to the Northern District of California, I will not address the defendants' motions to dismiss or stay.

## I. Facts

Plaintiff is a New York corporation engaged in the design and sale of clothing accessories, including neckwear. Defendant Grateful Dead Merchandising, Inc. ("GDM") is a California corporation also engaged in the sale of neckwear. Defendant Peter McQuaid, the Chief Executive Officer of GDM, is a resident of California, as are Deborah Koons Garcia and David Hellman, co-executors of the Estate. See Complaint for Declaratory Relief, Tortious Interference with Contractual Relations and Prospective Economic Advantage; Injury to Business Reputation ("Cmplt.") at ¶¶ 1–4.

In 1992, plaintiff entered into a Licensing Agreement ("the Agreement") with Nora Sage, a resident of Oregon who does business as "The Art Peddler" ("The Art Peddler"). See Cmplt. at ¶ 14; Plaintiff Stonehenge Ltd.'s Memorandum of Law ("Plaintiff's Brief") at 4–5. The Agreement authorized plaintiff to use artwork created by Jerome Garcia and supplied by The Art Peddler for use in the plaintiff's neckwear designs. See Estate of Jerome J. Garcia's Notice of Motion ("Notice of Motion") at Ex. A, ¶ C. According to plaintiff, The Art Peddler acted as Garcia's agent—and after Garcia's death in 1995, as the Estate's agent—with respect to the Agreement. See Cmplt. at ¶ 17. The Agreement was renewed in 1993 and 1996, and will expire by its terms on October 31, 1998. See id. at ¶¶ 15, 17. It contains a clause indicating that any controversy or claim arising out of it is to be settled by arbitration in San Raphael, California. See Notice of Motion at Ex. A, ¶ 9.

According to plaintiff, it discovered in November, 1996 that the Estate had appointed McQuaid as its "licensing coordinator." It further learned that McQuaid had used this position to distribute, through GDM and a company called Mulberry Neckwear, a line of neckwear similar to the Garcia line sold by plaintiff. When plaintiff complained of this conduct, the Estate allegedly threatened to terminate the Agreement. See id. at ¶¶ 1 24.

In this action, plaintiff seeks a declaratory judgment that the Agreement remains binding on the Estate as well as tort and contract damages based on the GDM's distribution of the Mulberry Neckwear line and the Estate's approval thereof. See id. at 35, 37, 41, 46, 50.

## II. Discussion

■ Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Plaintiff concedes that this action could have been brought in the Northern District of California; therefore, the only issue is whether suit there would be more convenient and fair than suit here. Determination of this question lies within my discretion and is decided with reference to a variety of factors. See In re Cuyahoga Equipment Corp., 980 F.2d 110, 117 (2d Cir.1992) (citing Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29, 108 S.Ct. 2239, 2243, 101 L.Ed.2d 22 (1988)).

The factors I consider relevant in this case are the forum-selection clause contained in the Agreement, the residence of likely witnesses, the site of the operative facts, and plaintiff's choice of forum.

## A. Forum Selection Clause

■ The Supreme Court has held that "the presence of a forum-selection clause ... [is] a significant factor that figures centrally" in a court's decision to grant or deny a 1404 transfer motion. *Stewart*, 487 U.S. 22, 29, 108 S.Ct. 2239, 2243, 101 L.Ed.2d 22 (1988). The general rule is that forum-selection clauses are regularly enforced. *See National Sch. Reporting Servs., Inc. v. National Sch. of Ca., Ltd.*, 924 F.Supp. 21, 23 (S.D.N.Y.1996); *Elite Parfums, Ltd. v. Rivera*, 872 F.Supp. 1269, 1271 (S.D.N.Y.1995). A party resisting transfer to a forum designated in its contract must demonstrate "exceptional facts" indicating that transfer would be inappropriate. *Weiss v. Columbia Pictures Television*, 801 F.Supp. 1276, 1279 (S.D.N.Y.1992).

■ Here, Counts I, II, and IV of the Complaint are premised on rights allegedly arising from the Agreement. As noted above, the Agreement contains a clause indicating that any controversy or claim arising out of it is to be settled by arbitration in San Raphael, a city located in the Northern District of California. At oral argument, plaintiff asserted that the Estate could not enforce this clause, as it was not directly a party to the contract. It is certainly true that, on its face, the Agreement appears to be between plaintiff and The Art Peddler. However, plaintiff repeatedly alleges in its Complaint that The Art Peddler is merely the Estate's agent with respect to the Agreement. *See* Cmplt. at ¶¶ 17, 32, 37, 45. This allegation, of course, is crucial to plaintiff's declaratory judgment claim: If the Estate were not bound to the terms of the Agreement, there would be little sense to the plaintiff's allegation that the Estate has wrongfully threatened to terminate it. *See* Cmplt. at ¶¶ 31–32. In short, therefore, plaintiff's position is that while the Estate is bound by the substantive terms of the Agreement, plaintiff is not bound by its forum-selection clause.

This position is obviously untenable. Thus, only a showing of "exceptional facts" will relieve plaintiff of its obligation to resolve its claims in California.

## B. Convenience of Witnesses

■ The convenience of prospective witnesses is often described as the most important consideration in § 1404 transfer analysis. *See, e.g., In re Eastern District Repetitive Stress Injury Litigation*, 850 F.Supp. 188, 194 (E.D.N.Y.1994); *Hernandez v. Graebel Van Lines*, 761 F.Supp. 983, 988 (E.D.N.Y.1991). Of the six parties in this case, all but one—the plaintiff—are from California. *See* Cmplt. at ¶¶ 1–4. It is at least likely, therefore, that the balance of convenience as to party witnesses tips in favor of transfer. Moreover, it appears that the majority of important non-party witnesses are located on the west coast: Nora Sage, as noted earlier, lives in Oregon, and Mulberry Neckwear is located in California. Plaintiff asserts that it may wish to call unspecified New York area retailers to testify as to the alleged similarity between its ties and those produced by Mulberry Neckwear. Such testimony would be relevant to Count II of the Complaint. However, if both companies sell their neckwear nationwide, as plaintiff asserts, retailers from California would presumably be able to testify on this subject as well. Therefore, the convenience of both party and non-party witnesses would be best served by transfer to California.

## C. Operative Facts

Another factor important to the resolution of this motion is where the events that form the basis of the claim occurred. *See Morales v. Navieras de Puerto Rico*, 713 F.Supp. 711, 713 (S.D.N.Y.1989). Plaintiff contends that the Agreement was negotiated both in California and New York, and therefore that this factor is neutral. However, the Complaint alleges much more than the mere existence of the Agreement, and the majority of other important events appear to have taken place on the west coast. For example, the alleged act forming the basis of Counts II, III and IV of the Complaint, the Estate's approval of

Mulberry neckwear's tie sales, involved only California entities and presumably occurred in California. Similarly, the alleged principal/agent relationship between the Estate and The Art Peddler began when both Jerome Garcia and Nora Sage were residents of California. *See* Declaration of Deborah Koons Garcia at ¶¶ 2, 11, 12. The Estate/Art Peddler relationship—the nature of which is central to the parties' dispute—is one between a California entity and a resident of Oregon. This factor therefore tips significantly in favor of transfer as well.

## D. Plaintiff's Choice of Forum

It is true that the plaintiff's choice of forum normally deserves "substantial consideration." *A. Olinick & Sons v. Dempster Bros., Inc.,* 365 F.2d 439, 444 (2d Cir.1966); *Dwyer v. General Motors Corp.,* 853 F.Supp. 690, 694 (S.D.N.Y.1994). However, the plaintiff's choice merits less deference when a majority of the operative facts occurred elsewhere, *see Anadigics, Inc. v. Raytheon Co.,* 903 F.Supp. 615, 616 (S.D.N.Y.1995), and much less when the claim arises from a contract with a forum selection clause specifying the proposed transferee district. *See Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 880 (3d Cir.1995). Because both these qualifications are applicable here, the plaintiff's decision to bring suit in New York carries only moderate weight, certainly not enough to overcome that of the other factors I have discussed.

## III. Conclusion

Because this suit could have been brought in the Northern District of California, and suit there would better serve the interests of convenience and justice, defendants' motion to transfer this action is granted.

SO ORDERED.